**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:   MICHAEL R. BERKMAN   :   Chapter 11
:
:
Debtor   :   Bky. No. 09-17860 ELF
:

# O R D E R

**AND NOW**, the Debtor having commenced this bankruptcy case by filing a voluntary petition under chapter 11 of the Bankruptcy Code on October 15, 2009;

* * * *

**AND**, at the time of the bankruptcy filing, the Debtor owning approximately fifty (50) residential properties, of which fourteen (14) were owned by the Debtor solely ("the Individual Properties") and thirty-six (36) were owned jointly (collectively, "the Joint Properties") with Paul Nichini ("Nichini");[1]

**AND,** the Debtor being the principal of several entities that own approximately seventy (70) additional residential properties ("the Other Properties");[2]

**AND,** the Debtor and Nichini being in the business of leasing the Joint Properties to residential tenants;

---

1. Since the commencement of the case, two (2) of the Joint Properties have been sold, leaving thirty-four Joint Properties and a total of forty-eight (48) properties.

2. The record reflects that the Debtor controls certain entities that own the Other Properties. Those entities also have filed for relief in this court under chapter 11 of the Bankruptcy Code: Fairmount Properties PA, LLC, Fairmount Properties NJ, LLC and First Charter Properties, LLC.

**AND**, and prior to the commencement of the bankruptcy case, the Debtor being the co-owner with primary responsibility for managing the Joint Properties;

**AND**, in buying and selling properties and managing his real estate portfolio (the Joint Properties, as well as the Individual Properties and the Other Properties) prior to the commencement of this case, the Debtor having engaged the services of employees of several entities in which he is a principal, including: Berkman Realty, Inc., Berkman-Colon Realty, Inc. and Parkside Residential Management, LLC;[3]

**AND**, the each of the Joint Properties being encumbered by at least two (2) mortgages;

**AND,** the first mortgage holders including Hyperion Bank, TD Bank, Gelt Financial Corp. and Parke Bank;

**AND,** Heritage Capital Corporation ("Heritage") holding a blanket junior lien on the Debtor's undivided one-half interest in the Joint Properties in the amount of $602,107.00, said lien having been granted without the knowledge or consent of Nichini;[4]

---

3.   After the bankruptcy case was filed, the Debtor did not seek the appointment of any of the insider entities as professionals to assist in managing the properties during the chapter 11 reorganization. To continue to receive the property management services previously provided, the Debtor directly employed particular employees of certain of these entities. These employees continued to carry out the functions they had provided before the chapter 11 case was filed. The Debtor's position is that the individuals he employed to assist him in the management of his properties were not professionals whose retention required court approval under §11 U.S.C. §327. The Debtor does not explain why court approval for the retention of Berkman Realty, Inc., Berkman-Colon Realty, Inc. and/or Parkside Residential Management, LLC would be necessary, but the employment of the staff members of those entities, for the purpose of carrying out the same functions as the entity that employed them, would not.

4.   In addition to his real estate activities, the Debtor also is a dealer in coins. He has a business arrangement with Heritage pursuant to which Heritage supplies the capital for the Debtor's transactions and the parties share any profits the Debtor generates. The Debtor is responsible to Heritage for any losses sustained. The $602,107.00 mortgage secures a note the Debtor granted Heritage to pay Heritage back for losses the Debtor had incurred. At the time the Debtor signed the note, the amount of the losses

(continued...)

**AND**, various mortgage loan instalments and real estate taxes being past due as of the commencement of this case;

**AND,** in his initial bankruptcy schedules, filed on October 27, 2009, the Debtor having disclosed, in Schedule F, the existence of twenty (20) creditors holding general unsecured claims totaling approximately $1.1 million;

**AND,** in his Amended Schedule F, filed on February 23, 2010, the Debtor having disclosed additional creditors holding general unsecured claims based on personal guaranties the Debtor granted with respect to loans provided to various entities that own the Other Properties;

**AND**, in his Amended Schedule F, the Debtor disclosing that his general unsecured debts, including the guaranties, total approximately $5.8 million;

∗ ∗ ∗ ∗

**AND,** at or around the time of the Debtor's bankruptcy filing, Nichini having advised the Debtor of his desire to take over the task of collecting the rents for the Joint Properties and to use the revenues to pay the properties' operating expenses – in particular, the secured debt service;

**AND**, the Debtor acquiescing to Nichini's decision to assume responsibility for collecting rents for the Joint Properties;

**AND**, since the commencement of the case, Nichini having collected most of the rents for the Joint Properties (following a brief transition period during which certain tenants continued to

---

4. (...continued)

were estimated, with a final amount to be calculated after certain coins were sold.  The Debtor testified that the actual amount of the liability is approximately $400,000.00.

send their payments to the Debtor) and having paid the mortgage instalments that have fallen due post-petition, certain expenses in maintaining the properties and at least some portion of the property insurance expenses;[5]

**AND**, neither the Debtor nor Nichini having requested court approval for Nichini's collection of the rents for the Joint Properties until Nichini filed a Motion for Authorization to Collect Rents and Pay Expenses Pursuant to 11 U.S.C. §363(e) Or, in the Alternative, Pursuant to 11 U.S.C. §362(d) ("the Nichini Motion") on January 12, 2010;

**AND,** in his documentary submissions to the court in support of the Nichini Motion, Nichini having accounted for all of the post-petition rents collected, albeit not in the format of, or with all of the detail typically required by, the monthly operating reports that must be filed by a chapter 11 debtor, see 11 U.S.C. §1106(a)(1) (incorporating 11 U.S.C. §704(a)(8));

**AND**, all of the rents collected by Nichini having been expended on legitimate expenses relating to the Joint Properties and none of revenue having been paid directly to Nichini for management fees or otherwise;

✼   ✼   ✼   ✼

**AND**, following the filing of the Nichini Motion on January 12, 2010, the Debtor, Hyperion Bank, TD Bank and the Acting United States Trustee ("the UST") having filed objections thereto;

---

5.    The record reflects that the Debtor maintained a single property insurance policy that covered the Joint Properties, the Individual Properties and the Other Properties. It appears that from the rents he collected, Nichini paid some, but not all, of the Joint Properties pro rata share of the premium for the insurance policy.  The Debtor testified that Nichini did not pay all of the post-petition repair and maintenance expenses arising with respect to the Joint Properties.

**AND**, a hearing on the Nichini Motion having been commenced, but not concluded, on February 17, 2010;

**AND**, on February 18, 2010, the UST having filed a Motion to Appoint Trustee under Chapter 11 or Convert to Chapter 7 ("the UST Motion") and having requested an expedited hearing thereon;

**AND**, the court having granted the request for an expedited hearing on the UST Motion, scheduling the hearing on February 24, 2010;

**AND**, the hearing on the Nichini Motion also resuming on February 24, 2010;

**AND**, on February 24, 2010, by agreement of the parties, the record (including the evidence presented on February 17, 2010, prior to the filing of the UST Motion) and the hearings with respect to the Nichini Motion and the UST Motion having been consolidated;

**AND**, the consolidated hearing on the Nichini Motion and the UST Motion having concluded on March 2, 2010;

\* \* \* \*

**AND**, as of the conclusion of the hearing on the Nichini Motion and the UST Motion on March 2, 2010, the Debtor having failed to account for the post-petition rents he collected in connection with the Joint Properties or the monies he allegedly expended post-petition for property repairs and improvements;[6]

---

6.  There is evidence that any misappropriation occurred. In making this statement, I suggest only that the Debtor has failed to file a proper written account of his real estate management activities.

\* \* \* \*

**AND**, through the UST Motion, the UST seeking relief under 11 U.S.C. §1104 or, alternatively, 11 U.S.C. §1112(b);

**AND**, the court finding that the evidence does not support the appointment of a chapter 11 trustee under §1104(a)(1);

**AND**, the court finding that the appointment of a chapter 11 trustee is not in the best interests of the creditors and the bankruptcy estate, see 11 U.S.C. §1104(a)(2), primarily due to the likely administrative expense that would result;

\* \* \* \*

**AND**, the court finding that the UST has established "cause" for the dismissal or conversion of this case under 11 U.S.C. §1112(b)(4)(F);[7]

---

7. The individual Debtor in this case has a relatively complex financial life. In addition to his activities as a coin dealer, he also owns or controls approximately one hundred twenty (120) residential properties. Some are some owned individually, some jointly with Nichini and some through entities that he controls. To take advantage of economies of scale, his practice has been to manage the properties as a single group. However, doing so necessitates that the Debtor conscientiously and accurately account for the rental income generated by the properties and properly allocate and account for expenses incurred among the properties. It appears that the prepetition conflict between the Debtor and Nichini was attributable largely to Nichini's perception that the Debtor failed to maintain proper accounting records.

Whatever the merits of Nichini's prepetition complaints, there is no doubt that the Debtor has utterly failed to fulfill his responsibility to file a proper accounting of his post-petition financial activities. The Debtor presented no reasonable explanation why, as of the March 2, 2010 hearing, more than four (4) months into his bankruptcy case, he had not filed the most basic of financial disclosures for each month of operations: a Schedule of Cash Receipts and Disbursements and a Statement of Operations. Both of these disclosures are part of the Monthly Operating Reports that the U.S. Trustee requires chapter 11 debtors to compile and file. The Debtor presented no reasonable excuse for his failure to comply with his obligations other than suggesting that he was very busy. That excuse is not acceptable. The Debtor's disregard of his reporting obligations suggests either that he fails to appreciate the gravity of his fiduciary obligations as a chapter 11 debtor or is so distracted or overwhelmed by his coin dealership commitments

(continued...)

**AND,** the court concluding that "unusual circumstances" do not exist within the meaning of 11 U.S.C. §1112(b)(1), making it mandatory that the case be dismissed or converted tochapter 7;[8]

**AND**, consistent with the recommendation of the UST, the court concluding that conversion of the case to chapter 7 rather than dismissal is in the best interests of creditors and the estate;[9]

---

7. (...continued)
that he cannot be relied upon to timely perform his reporting obligations with respect to his real estate management activities. Either way, the UST has established "cause" for dismissal or conversion of the case under 11 U.S.C. §1112(b)(4)(F).

8. Section 1112(b)(1) states:

> absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate.

Section 1112(b)(2) states that the debtor or another party in interest can establish "unusual circumstances" by proving that:

> (A) there is a reasonable likelihood that a plan will be confirmed within the time frames established in sections 1121 (e) and 1129 (e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)—
>
>> (i) for which there exists a reasonable justification for the act or omission; and
>>
>> (ii) that will be cured within a reasonable period of time fixed by the court.

Here, I have found that the Debtor has presented no reasonable justification for his failure to comply with his financial reporting requirements. Therefore any claim of "unusual circumstances" fails to satisfy §1112(b)(2)(B)(i).

9. Under 11 U.S.C. §1112(b), the decision whether to convert or dismiss is entrusted to the

(continued...)

\* \* \* \*

**AND**, in light of the conversion of this case to chapter 7 for cause, the prepetition default on various mortgage obligations, Nichini's status as a co-owner of the Joint Properties (giving him an equal right to collect the rents under applicable nonbankruptcy law) and the Debtor's acquiescence to Nichini's post-petition management activities, the court finding it appropriate to authorize Nichini to continue to collect the rents pursuant to 11 U.S.C. §363(e), subject to certain conditions set forth below, at least on an interim basis and, depending upon the business judgments made by the chapter 7 trustee, perhaps indefinitely;

\* \* \* \*

It is therefore, **ORDERED** that:

1. The UST Motion is **GRANTED**.

2. Effective immediately, the above chapter 11 case is **CONVERTED** to chapter 7.

3. The Nichini Motion is **GRANTED** as set forth below.

4. So long as the Joint Properties remain property of the bankruptcy estate, but **SUBJECT TO** Paragraphs 5 and 6 below:

    A. Nichini is authorized to collect the rents generated by the Joint Properties.

---

9. (...continued)
discretion of the bankruptcy court. In re Congoleum Corp., 414 B.R. 44, 61 (D.N.J. 2009); In re Camden Ordnance Mfg. Co. of Arkansas, Inc., 245 B.R. 794, 797 (E.D. Pa. 2000); In re Brown, 2005 WL 2589194, at \*2 (Bankr. E.D. Pa. Mar. 31, 2005). Here, I conclude that conversion of the case to chapter 7 is appropriate. After conversion, the UST will appoint an independent fiduciary who will evaluate the Debtor's assets (and consider whether it is advisable to operate the real estate holdings pending their liquidation or abandonment) and determine whether it is possible to raise an estate sufficient to generate a meaningful distribution to creditors.

    B. Nichini shall deposit all monies received in the existing bank account created for that purpose (TD Bank Acc't # 4244663426 in the name of the PLN Holdings - Real Estate Division) ("the Account").

    C. Nichini may make disbursements from the Account referenced in Paragraph B for the purpose of paying any due and owing post-petition instalments on the mortgages that encumber the Joint Properties and paying other necessary and immediately due expenses associated with the properties. Disbursements from the Account may not be made for any other purpose and, in no event shall any management fees or any management compensation be paid to Nichini or any third party.

    D. Nichini shall file a monthly report, in a form satisfactory to the UST, accounting for all rents received and expenditures made with respect to the Joint Properties. For the period October 2009 through February 2010, Nichini shall file the report **on or before March 24, 2010**. The reports for March 2010 and for each month thereafter that this reporting requirement remains in effect shall be filed on the 15th day of the month following the last day of the reporting period.

5. If the chapter 7 Trustee seeks to operate the Debtor's business and manage the Joint Properties pursuant to 11 U.S.C. §721, nothing in this Order shall prejudice his/her right to request that this court vacate Paragraph 4 of this Order, **PROVIDED THAT** the Trustee files a motion seeking authority to operate under §721 ("the §721 Motion") **on or before April 7, 2010**.

6. Further, if the chapter 7 Trustee timely files the §721 Motion, Paragraph 4 shall remain in effect pending further order of this court. If the Trustee does not timely file the §721 Motion, the provisions of Paragraph 4.B and 4.C will **TERMINATE** effective **April 8, 2010**.

Date: **March 10, 2010**

                                       **ERIC L. FRANK**
                                       **U.S. BANKRUPTCY JUDGE**